UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Shipping & Finance, LTD., <br><br> Plaintiff, <br><br> v. <br><br> Aneri Jewels LLC, <br><br> Defendant. | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff, Shipping & Finance, LTD. ("SFL" or "Plaintiff"), by and through undersigned counsel, as and for its Complaint against Defendant Aneri Jewels LLC, ("Aneri" or "Defendant"), respectfully alleges and pleads:

### IDENTITY OF PARTIES

1. Plaintiff, Shipping & Finance, LTD. is incorporated under the laws of the State of Connecticut with its principal place of business at 300 First Stamford Place, Suite 403, Stamford, CT 06902.

2. Defendant, Aneri Jewels LLC is a limited liability company organized under the laws of the State of New York with its principal place of business at 592 5th Ave, 4th Floor, New York, NY 10036.

## VENUE AND JURISDICTION

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does conduct business in the State of New York and has its head office in this State rendering it "at home" for the purpose of general jurisdiction.

5. Venue is proper in this Court under 28 U.S.C. § 1391(c) because Defendant presently, and at all times relevant hereto, has established its principal place of business in New York County, New York.

## BACKGROUND

6. SFL provides investment banking and financing services for clients.

7. Aneri is a jewelry distribution business.

8. On February 9, 2018, SFL and Aneri entered into an Advisory and Financing Agreement ("Agreement"). Exhibit A.

9. Under the Agreement, SFL would act as "exclusive financial advisor and placement agent to [Aneri] for raising working capital or other debt financing… for [Aneri's] New York operations ('Proposed Financing')". Exhibit A at 1.

10. The Agreement was to last for an unspecified amount of time and/or until Aneri received funding for its business.

11. The Agreement could be terminated by either party "at any time upon written notice to the other party 120 days following the execution" of the Agreement. Exhibit A at 2.

12. As contemplated by the Agreement, during the time that the Agreement was in effect, SFL would act as Aneri's exclusive agent. Exhibit A at 1.

13. The services to be performed by SFL included:

    a. "Preparing, in consultation with Aneri, information to be made available to Potential Lenders;

    b. Assist [Aneri] in arriving at the optimal structure for the Proposed Financing;

    c. Engage in pre-marketing activities with regard to the Proposed Financing;

    d. Help prepare [Aneri] management for lender presentations; and

    e. Use best efforts to negotiate and arrange the Proposed Financing." Exhibit A at 1.

14. In exchange for the services detailed in the Agreement, Aneri agreed to pay SFL a two-percent success fee ("Success Fee") of the gross proceeds raised during the period that the Agreement was in effect. Exhibit A at 2.

15. Fifty-percent of the Success Fee was due once a "sanction letter", or financing commitment, was signed; the remaining fifty-percent of the Success Fee was due at the time of first disbursement. Exhibit A at 2.

16. In exchange for the services detailed in the Agreement, Aneri also agreed to "reimburse SFL… for its reasonable out-of-pocket and travel expenses". Exhibit A at 2.

17. As per the termination clause in the Agreement, if Aneri terminated the Agreement for a reason other than material breach by SFL, Aneri would still be required to pay SFL the Success Fee if it obtained financing within one year from cancellation. Exhibit A at 2.

18. The purpose behind the Agreement and termination clause was to prevent Aneri from using the efforts of SFL to obtain a "stalking horse" and then negotiate a deal with another lender thereby avoiding the Success Fee.

## PLAINTIFF'S PEFORMANCE UNDER THE AGREEMENT

19. Between February and August 2018, SFL faithfully performed the services it pledged under the Agreement.

20. SFL processed multitudes of documents, financial reports, and projections relating to Aneri's business and prepared these materials to market Aneri to potential lenders.

21. SFL held detailed meetings with potential lenders in order to develop interest in Aneri and produce viable financing terms to Aneri.

22. After months of correspondences and exhaustive negotiations, SFL succeeded in securing multiple funding proposals that matched Aneri's requirements.

23. SFL ultimately negotiated a term sheet with Sterling National Bank ("Sterling").

24. SFL presented Aneri with a draft term sheet from Sterling.

25. Aneri informed SFL that the terms provided by Sterling were insufficient.

26. SFL continued to diligently negotiate with Sterling to finalize agreeable terms.

27. On August 22 2018, Sterling presented Aneri with a revised and executable term sheet for a loan valued at $18 million.

28. As of August 27, 2018, correspondence about the terms Sterling had presented continued.

## DEFENDANT'S TERMINATION OF THE AGREEMENT & PROCUREMENT OF FUNDING OUTSIDE OF THE AGREEMENT

29. On August 31, 2018, without warning, Aneri sent SFL a termination letter by email.

30. SFL had not breached the Agreement in any way.

31. In September 2018, Sterling informed SFL that Aneri had rejected the revised term sheet.

32. Aneri rejected Sterling's Term Sheet without engaging or consulting SFL.

33. Sterling also stated that Aneri had agreed to terms with Israel Discount Bank ("IDB").

34. A few weeks prior to termination, Aneri's President stated they would be "fair" and "take care" of SFL if Aneri chose to agree to terms with IDB.

35. SFL understood this to be a promise to perform, as it was the exclusive agent under the Agreement.

## DEFENDANT'S FAILURE TO PAY PLAINTIFF UNDER THE AGREEMENT

36. Upon information and belief, Aneri agreed to terms with IDB for a loan amount between $15 million to $18 million; thereby triggering Aneri's duty to pay the success fee under the Agreement.

37. On September 21, 2018, SFL sent Aneri a letter and invoice demanding payment of the first half of the two-percent of the funding Aneri procured from Sterling in the amount of $180,000 ("Payment Letter").

38. Aneri has failed to pay any part of the Success Fee required under the Agreement despite due demand.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT FOR BREACH OF CONTRACT

39. Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs as if set forth fully herein.

40. Plaintiff and Defendant, for valuable consideration, entered into a valid and enforceable contract (the Agreement) on February 9, 2018 for financing Defendant's business.

41. Pursuant to the Agreement, Plaintiff was owed a Success Fee of two-percent for the performance of its services on any loan obtained by Defendant during the employment period of Plaintiff and for one year after termination.

42. Pursuant to the Agreement, Plaintiff was also owed reimbursement for expenses it incurred in connection with its performance.

43. Pursuant to the Agreement, Plaintiff fully performed the services it pledged.

44. Pursuant to the Agreement, Plaintiff procured financing for Defendant through Sterling for $18 million during the term of Plaintiff's employment.

45. Upon information and belief, Defendant utilized the Sterling term sheet to negotiate terms with IDB for a loan amount between $15 million to $18 million during Plaintiff's employment or within one year after termination.

46. Defendant failed to perform under the Agreement by not paying the Success Fee to Plaintiff, its exclusive agent.

47. Defendant failed to perform under the Agreement by not reimbursing Plaintiff for the expenses it incurred.

48. As a result of Defendant's breach of contract, Plaintiff is entitled to at least $300,000 in damages, plus expenses in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

49. Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs as if set forth fully herein.

50. The Agreement between Defendant and Plaintiff created a duty of good faith and fair dealing for both parties.

51. Defendant breached its respective duties by using Plaintiff to find a lender, negotiate terms, and obtain a term sheet; then using the acquired information to obtain a loan on its own, thereby avoiding the Success Fee.

52. Defendant's breach deprived Plaintiff of payment under the Agreement.

53. Defendant is liable to Plaintiff for Plaintiff's damages and losses resulting from Defendant's breach of its duty of good faith and fair dealing.

54. As a result of Defendant's breach, Plaintiff is entitled to at least $300,000 in damages, plus expenses in an amount to be determined at trial.

**WHEREFORE**, Plaintiff seeks recovery of its compensatory damages in the amount of no less than $300,000 and expenses, such amount to be determined at trial, and respectfully requests that this court:

(A) Enter judgment in favor of Plaintiff against Defendant at least $300,000, plus interest at the New York statutory rate of 9% from September 20, 2018;

(B) Award Plaintiff the expenses it incurred in connection with its performance;

(C) Order such other relief in favor of Plaintiff as the Court finds just and proper.

Dated: February 11, 2018

WATSON, FARLEY & WILLIAMS LLP

John G. Kissane
250 W. 55th St.
New York, N.Y. 10019
Phone (212) 922-2200
Fax (212) 922-1512
jkissane@wfw.com
*Attorneys for Plaintiff*