UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SHIPPING & FINANCE, LTD.,

                Plaintiff,

    - against -                     **MEMORANDUM AND ORDER**

ANERI JEWELS LLC,                 19 Civ. 1293 (NRB)

                Defendant.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Aneri Jewels LLC ("Aneri") moves to dismiss the first amended complaint of Shipping & Finance, Ltd. ("SFL"). The Court grants Aneri's motion for the reasons stated below.

## Background

SFL provides investment banking and financing services to its clients. First Am. Compl. ("FAC") ¶ 6. Aneri distributes jewelry. FAC ¶ 7. Laxmi Diamond Pvt. Ltd. ("Laxmi"), which is headquartered in India, owns Aneri. FAC ¶ 8.

In February 2018, SFL and Aneri executed an Advisory and Financing Agreement (the "Agreement") for SFL to "act as [the] exclusive financial advisor and placement agent to [Aneri] for raising working capital or other debt financing in connection for [sic] [Aneri's] New York operations ('Proposed Financing')." Declaration of Stephen Wagner, Ex. 2 ("AFA") at 1. Under the

Agreement, SFL was to perform various services in order to procure financing proposals from lenders for Aneri. AFA at 1.

In exchange for those services, Aneri agreed to pay SFL a "Success Fee," which the Agreement defined as 2% of "the amount of debt financing stated in the loan facility agreement from the Lender." AFA at 2. The Agreement provided that Aneri would pay SFL half of the success fee "once the sanction letter is signed" and the other half "at the time of the first disbursement." AFA at 2. A "sanction letter" is another name for a term sheet. FAC ¶ 16. Aneri also "agree[d] to reimburse SFL . . . for its reasonable out-of-pocket and travel expenses incurred in . . . performance of the service[s] hereunder" so long as SFL "s[ought] approval for th[ose] expenses in advance . . . ." AFA at 2.

The Agreement contained a termination clause under which "[t]he engagement may be terminated by [Aneri] or [SFL] at any time upon written notice to the other party 120 days following the execution date of this Agreement . . . ." AFA at 2. It provided that New York law governed its terms, and a merger clause stated that the Agreement was "the sole and entire Agreement between the parties . . . and supersedes all prior agreements, representations and understandings of the parties." AFA at 2. SFL negotiated the terms of the Agreement with Laxmi in India. FAC ¶ 10.

Between February and August 2018, SFL prepared marketing materials, met with lenders, and ultimately secured multiple funding proposals for Aneri. FAC ¶¶ 21-24. One of those lenders was Sterling National Bank ("Sterling"), with which SFL negotiated a draft sanction letter. FAC ¶¶ 25-26. Aneri did not approve of the letter's terms, however, so it asked SFL to renegotiate them with Sterling. FAC ¶ 27-28. On August 22, 2018, Sterling presented Aneri with a sanction letter for $18 million of financing, which Sterling had signed and which contained an empty signature block for Aneri to sign. See Declaration of Sampath Kumar ("Kumar Decl."), Ex. H.

On August 31, 2018, Aneri emailed SFL a letter terminating the Agreement. FAC ¶ 30. The next month, Sterling notified SFL that Aneri had declined to sign Sterling's August 22 sanction letter, and had instead agreed to financing with Israel Discount Bank ("IDB"). FAC ¶¶ 32, 34. SFL did not introduce Aneri to IDB. Pl.'s Opp. to Def.'s Mot. to Dismiss ("Opp.") at 6. Prior to August 22, SFL was aware that Aneri had been in negotiations with IDB, and Aneri's President had told SFL that Aneri "would be 'fair' and 'take care' of SFL" if Aneri reached an agreement with IDB. See FAC ¶ 35. Upon learning of Aneri's agreement with IDB, SFL demanded that Aneri pay it half of the success fee, or $180,000,

for its procurement of Sterling's August 22 sanction letter, but Aneri declined to do so. FAC ¶¶ 37-38.

In February 2019, SFL filed a complaint against Aneri, which it amended the next month. The first amended complaint (the "complaint") asserted two causes of action. First, it claimed breach of contract for Aneri's failure to pay SFL half of the success fee for Sterling's August 22 sanction letter. FAC ¶¶ 40-46. Second, it maintained that by negotiating and agreeing to financing with IDB, Aneri "deprived [SFL] of payment under the Agreement" in violation of the implied covenant of good faith and fair dealing. FAC ¶¶ 49-52. Aneri now moves to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Discussion

The Court may dismiss the complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "'To survive a motion to dismiss'" on this basis, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 118, 122 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). If a contract's language is clear and unambiguous, then the Court may dismiss a breach of contract claim on a motion to dismiss under

4

Rule 12(b)(6).  See, e.g., Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC, 300 Fed. App'x 48, 49 (2d Cir. 2008).

Under New York law, which the parties concur governs the Agreement, the elements of a breach of contract claim are "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." RCN Telecom Serv., Inc. v. 202 Centre St. Realty LLC, 156 Fed. App'x 349, 350-51 (2d Cir. 2005).  Whether SFL has pled this claim turns on whether Sterling's August 22 sanction letter was "signed" within the meaning of the Agreement. See AFA at 2 (providing that half of the success fee "is due once the sanction letter is signed" (emphasis added)).  While SFL contends that the sanction letter was "signed" because Sterling had signed it, Aneri maintains that it was not because Aneri had not signed it.  Thus, the question presented is whether the contractual term "signed" required Aneri to have signed the letter before it became obligated to pay half of the success fee.

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000) (applying New York law).  "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." W.W.W. Assoc., Inc. v. Giancontieri, 566 N.E.2d 639, 641 (N.Y. 1990).  "Ambiguity is

determined by looking within the four corners of the document, not to outside sources." Kass v. Kass, 696 N.E.2d 174, 180 (N.Y. 1998). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002) (internal quotation marks omitted).

When evaluating whether a contract is ambiguous, "[i]t is black-letter law that courts must reject interpretations of agreement provisions that are commercially unreasonable or illogical." Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F.Supp. 3d 156, 174 (S.D.N.Y. 2015) ("Wells Fargo"); see also, e.g., Greenwich Capital Fin. Prods., Inc. v. Negrin, 903 N.Y.S.2d 346, 348 (N.Y. App. Div., 1st Dep't 2010) ("a contract should not be interpreted to produce a result that is absurd, commercially unreasonable[,] or contrary to the reasonable expectations of the parties" (internal quotation marks omitted)); Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986) (contracts "should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes." (internal quotation marks omitted)).

SFL argues that the term "signed" is ambiguous because the Agreement does not explicitly state by whom the sanction letter must be signed for Aneri to owe SFL half of the success fee. See Opp. at 8-9. However, to deem the Agreement ambiguous for that reason would ignore the precept that, "[i]n deciding whether an agreement is ambiguous, '[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.'" Collins, 303 F.3d at 433 (quoting Kass, 696 N.E.2d at 181).

Evaluating the term "signed" in this broader context, the Court concludes that it unambiguously required Aneri to have signed the sanction letter. The business purpose of SFL's and Aneri's arrangement, as reflected in the Agreement, was for SFL to assist Aneri in obtaining proposed financing for its New York operations. If procurement of a sanction letter signed by a lender was alone sufficient, then Aneri would be committed to paying a fee regardless of whether the terms of the letter were acceptable. Such an interpretation would eviscerate "the business purposes sought to be achieved" through the Agreement, Newmont Mines Ltd., 784 F.2d at 135, and thus, contrary to New York law, would construe the Agreement in a commercially unreasonable way, see, e.g., Wells Fargo, 127 F.Supp. 3d at 174 ("courts must reject interpretations

7

. . . that are commercially unreasonable"). Moreover, such a reading would violate "a longstanding principle of New York law that a construction of a contract . . . that would place one party at the mercy of the other, should, if at all possible, be avoided." ERC 16W Ltd. P'ship v. Xanadu Mezz Holdings LLC, 943 N.Y.S.2d 493, 498 (N.Y. App. Div., 1st Dep't 2012) (collecting cases).

Accordingly, because "the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." Rainbow v. Swisher, 527 N.E.2d 258, 259 (N.Y. 1988); see also W.W.W. Assoc., Inc., 566 N.E.2d at 642 ("It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." (internal quotation marks omitted)).

SFL nonetheless argues that extrinsic evidence of trade practices in India, where the Agreement was negotiated, shows the parties intended for the sanction letter to be "signed" even if only the lender had signed it. Specifically, it submitted with its opposition papers a declaration from someone who was not present at the negotiation, asserting that during it, SFL told Laxmi that the success fee was "consistent" with "customary practices" in India to pay half of it "upon presentation of an

8

offer to provide financing upon the terms discussed with the client." Kumar Decl. ¶ 25. This declaration is inadmissible hearsay and violates the Agreement's merger clause. SFL also submitted a declaration from a former Indian bank manager stating that Indian trade custom is to pay half of the fee upon receipt of "an executable sanction letter," and attaching a sanction letter with a signature block to agree to "pay the Arranger's fee" upon "receipt of the Approval or confirmation letter from" the lender. Declaration of Chakravarthy Rangarajan ¶ 17, Ex. C. This declaration is irrelevant and is a transparent effort to create an ambiguity where none exists. Moreover, in proffering it, SFL again ignores the Agreement's merger clause. Even if the Court could consider these declarations, the custom they describe is inconsistent with the Agreement's requirement that the sanction letter be "signed" because neither an offer nor an executable letter must be signed. See, e.g., Oswald v. Bagg, 151 N.Y.S. 1134, 1134 (N.Y. App. Div., 2d Dep't 1915) (deeming unsigned written document to be an offer); "Executable," Oxford English Dictionary Online (October 2019).

Accordingly, because Aneri did not sign Sterling's August 22 sanction letter, it did not owe SFL any part of the success fee, and the Court dismisses SFL's claim for breach of contract.[1]

The Court also dismisses SFL's claim for breach of the implied covenant of good faith and fair dealing. That claim is based on Aneri negotiating and agreeing to terms with IDB instead of Sterling, thus "depriv[ing] [SFL] of payment under the Agreement," for which SFL seeks half of the success fee in damages. FAC ¶¶ 48-52. However, "where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is intrinsically tied to the damages allegedly resulting from the breach of contract, there is no separate and distinct wrong that would give rise to an independent claim." ARI & Co., Inc. v. Regent Int'l Corp., 273 F.Supp. 2d 518, 522-23 (S.D.N.Y. 2003) (internal quotation marks omitted) (dismissing breach of implied covenant claim under New York law because "the damages it seeks to recover are identical to those asserted in the breach of contract claims"); see also, e.g., Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied

---

[1] Contrary to SFL's contention in its opposition brief, SFL cannot maintain a breach of contract claim for Aneri's failure to pay its out-of-pocket and travel expenses because the complaint fails to allege not only any such expenses, but also that SFL "s[ought] approval for [them]," as the Agreement requires. AFA at 2.

covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

**Conclusion**

For the reasons stated above, the Court grants Aneri's motion to dismiss and dismisses SFL's complaint with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 17, and to close the case.

**SO ORDERED.**

Dated: New York, New York
October 21, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE